Chief Justice Bibb
delivered the Opinion of the Court.
20th January, 1795—James Craig and wife executed a deed to James Feland, for one hundred and ten acres of land, part of Craig’s settlement and preemption, which deed was duly acknowledged and recorded on the same day—consideration, £15.
21st June, 1796—Craig and wife executed a deed to Jessee Emmerson, (consideration £60,) for one hundred acres, part of same tract, duly acknowledged and recorded same day. Emmerson conveyed to Feland this tract, on the 24th August, 1811—by deed, duly acknowledged and recorded on the 27th of same month.
12th October, 1798—Craig and wife executed a deed to Jean McHatton, in consideration of £8, for boundaries said to contain four hundred acres, more or less. This deed was acknowledged by Craig alone, and duly recorded on the 18th October, 1798.
16th November. 1798—Craig and wife and Jean McHatton, executed a deed to Thomas Estis and William Buford, in consideration of £288, for the boundaries contained in the deed to Jean McHatton—and called in this deed, five, hundred acres:—
—With endorsement signed by Estis and Buford, that the land was conveyed as security to them, for a conveyance to be made by Craig, within twelve months, of a tract of six hundred and forty acres in Tennessee, on Harpeth river, sold by Craig to them, “for valuable consideration;” if that track *229 should be conveyed accordingly, then this deed to be void; else this land to be sold for the best price that can be had, in order to make satisfaction to Buford and Estis, the overplus, if any, to go to said Craig, his heirs and assigns.
Enrollment of the deed, and endorsement.
Estis and Buford, their deed to Feland of 28th Jan’y. 1800, for the 500 acres.
Endorsement by Estis and Buford on their deed, to Feland.
Enrollment.
Writ de ideota inquirendo 12th May 1813 and by inquisition thereon, James Craig found a lunatic, 12th July, 1814.
12th March, 1799, this deed, with the endorsement was proved by the subscribing witnesses, and deed and endorsement were admitted to record.
28th January, 1800—Estis and Buford executed a deed, in consideration of £288, to James Feland, for the same tract, (so conveyed to them by Craig and wife and Mary McHatton, called five hundred acres,) with warranty only against themselves, being the tract on which Craig then lived; and reciting in the deed, that it was made with the consent of Craig and wife, who were the former owners: —
—With an endorsement signed by Estis and Buford, that this deed was executed to Feland “in consequence of the within named James Craig and Mary, his wife, finally consenting and agreeing to the within mentioned sale and conveyance, which comports with a deed and memorandum executed by said Craig and wife and Jean McHatton, to said Thomas Estis and William Buford, which stands recorded,” &c.—“and that Feland had paid Buford and Estis, on behalf of said James Craig and wife, &c. the just sum of principal and interest, including the within mentioned consideration, amounting in the whole to £297 14 1.”
21st March, 1800—This deed and endorsement were recorded upon proof, by the witnesses.
12th May, 1813—A writ de ideota inquirendo was sued out, and by inquisition taken thereon,—
—13th July, 1814—Jas. Craig was found a lunatic, at some times enjoying lucid intervals, and that he had been in the same state of lunacy for twenty years last past, so that he is incapable of governing himself, his lands, tenements, goods and chattels; and thereupon William Craig, his son, and John Craig (Gilbert,) were appointed his committee for restraint and safe keeping and entered into *230 bond and security according to the order of court; bearing date 30th August. 1814 ,this proceeding was held and had in Lincoln circuit, where Craig then resided.
Bill by Craig's committee, to set aside his deeds of conveyance.
Bill of Revivor.
Answer of Feland's heirs.
Estis and Bufor’s answer.
Emmerson’s answer.
9th August, 1816—The committee exhibited a bill on behalf of said Craig, a lunatic, against Jane Bright, late McHatten, widow. Jesse Emmerson, William Buford. Thomas Estis and James Feland, to set aside those deeds, and for the possession, because said Craig had been deprived of reason for more than thirty years, during which time, he had no lucid interval.
14th May, 1817—William. Craig, son and heir of James Craig, filed his bill of revivor, against tho heirs of Feland, who had also departed this life, and against the other defendants.
14th November. 1817—The heirs of Feland, by their answer, insist that the prices paid for those lands, at the dates of the respective deeds, were full and adequate, according to the valuation of that day; that the contracts were fair, and no advantage taken of Craig, and that he was, at the execution of those deeds, capable of contracting, and not a lunatic; although long afterwards, by the increase of years and dotage, he was found one.
14th Nov. 1827—The answers of Estis and Buford, state that Craig was in debt, and had sold a tract of land with liberty to redeem; that the time of redemption was nearly out; that Craig applied to them to buy the Tennessee land to raise money to pay his debts and redeem his land; they bought and took security for the title by the deed recited; that after much trouble and expense they were unable to get the title; that to reimburse their advances to Craig, he himself sold to Feland, and at Craig’s request to save expense, they made the deed to Feland with the memorandum endorsed; that they received nothing but a return of the money actually paid, and interest, and are not at all responsible—they deny that Craig was a lunatic, but on the contrary, keen and capable in contracting.
14th November, 1817—Emmerson answers, that *231 Craig sold the one hundred acres in 1792 to Jahez Townsend, he believes, at twenty shillings per acre, and received the money, executed a bond for a title to Townsend, and gave him possession who sold and assigned to the defendant’s father, Samuel, who sold and assigned to the defendant, and Craig executed the deed of 1793, and took in his bond; and he sold to Feland, and delivered the possession, which had been handed down from Townsend. Me denies lunacy or incapacity, but asserts the keenness and judgment of Craig in a bargain, and that for this tract he obtained the very highest price then going, for lands in that part of the country.
Amended bill of Craig’s heir.
Supplemental bill.
Answer of Feland's heirs to amended bill; lapse of time relied on.
*231 11th November, 1819 — The complainant, son and heir of James Craig, filed his affidavit, that he had discovered since the filling of the answers of the defendants, that the deed from Craig to Buford and Estis was but a senility for the conveyance of the Tennessee land,' and obtained leave, and filed his supplemental bill, alleging that the deed to Feland from Buford and Estis, was nothing more than a deed of trust or mortgage; that Feland offered to his mother, who was transacting the business of the estate, to advance, the money to Buford and Estis, who were requiring the, repayment of what they had advanced for the Tennessee laud, and to fake the like lien: and, therefore, Buford and Estis conveyed to Feland, who acquired nothing but a lien for repayment. That Feland immediately after that deed entered into possession, and has enjoyed it ever since: that the rents and profits have long since announced to an extinguishment of the advances made upon that trust — and prays an account of the rents and profit, &c. and that the, deed may be treated us a mortgage or security only.
11th May, 1820—By another supplemental bill, ii is charged that Jean McHatton held the land in trust for the said Craig; and that she accepted the deed, as it was executed and intended only as a trust.
The heirs of Feland deny that the deed to their father from Buford and Estis was intended as a *232 trust or security, but as an absolute sale in fee simple; that Craig and wife and Jean McHatton, wore all assenting to the absolute sale to their ancestor; and rely upon lapse of time in bar.
Second amended bill.
Deed of Feland's heirs to Craig's committee.
Decree of the circuit court.
Touching the effect of the inquisition; finding Craig a lunatic on his prior acts.
Evidence and decision of the question of Craig’s sanity.
*232 14th October, 1824 — The complainant, by amend ed bill, made the administrators of Feland parties and alleged the deed from Buford and Estis to Feland. to have been intended as a security, as in his former supplement. T is the administrators deny, and insist on that deed as an absolute, unconditional sale, made, by the assent of Craig.
Oil the 10th June 1815, James Feland conveyed to William Craig and John Craig, committee for Jas. Craig, one hundred arres, part of the tract convened by Buford and Estis, as being reserved at the time of the sale by Craig — stipulating that this conveyance should not prejudice, the question of Craig’s sanity, nor be considered as a compromise.
Upon hearing, the circuit judge dismissed the bill, from which the son and heir has appealed.
It, would be useless to discuss the regularity of propriety of the proceedings from the issuing of the writ ideota inquirendo, up to November 1819, (when the appellant filed bis supplemental bill, claiming the deed from Buford and Estis to be but a mortgage,) or to enquire what retroactive effect the inquisition might have bad, if any, upon the deeds which are the subjects of complaint. Because the complainant himself has, by bis bill, traversed in part, the finding of the inquest; the defendant has traversed it so far as relates to the previous lunacy,-and (he parties have mutually preparred their evidence, as upon a traverse. Whatever effect may be due to the inquisition of July 1814, finding Craig a lunatic, with lucid intervals at some times, and that he had been in the same state of lunacy for twenty years preceding; it ran not over‘come the testimony as to his sanity, at the times of the execution of the deeds in question.
By the evidence of bis associates, and nearest neighbors, who knew him in his boyheood and at *233 school, who were with him on military campaigns, who knew him as an officer, who saw him at his own house, at the court house, and at other public places; the fact is established by the testimony of twenty seven or eight witnesses, that in the year 1795 and upwards, until long after the execution of all the deeds and acts in controversy, James Craig was of sound mind and memory. The sanity of said Craig at the dates of those deeds respectively, is well attested by those who knew him, and had opportunities of knowing his state of mind. As to this fact, Judge Mills dissents.
Question stated.
Discussion of the effect of the recital in the deed and endorsement, whether to make the deed absolute or in trust.
The question then arises, as to the legal effects and consequences of the deed and endorsement, from Buford and Estis, of 1800, to Feland.
The deed purports to be an absolute conveyance in fee simple, made by Buford and Estis with the assent of Craig. Does the endorsement alter that meaning, and convert the deed into a security only, redeemable by Craig?
That Buford and Estis, under their deed from Craig, held the land only as security for the conveyance of the Tennessee lands, is clear, If the conveyance of those lands was not made within twelve months from the date, then the lands pledged for indemnifying Buford and Estis in case of failure, were to be sold to satisfy Buford and Estis, and the surplus to go to Craig. That the Tennessee lands were not conveyed, is admitted by the bill. Before January 1800 the time. for conveyance of the Tennessee lands had expired. Buford and Estis, with the assent of Craig, might sell and convey for the purposes of the deed to them, without resorting to a court of equity. Craig was as competent, by his own will and act, to foreclose himself, as a court of equity was to foreclose him and order a sale. The deed and endorsement both recite the assent of Craig to the sale to Feland. Whether those recitals are true or false, will be an after consideration, The present enquiry is, what, is the legal construction of the deed and endorsement (with the recitals therein, and reference to the deed under *234 which Buford and Estis held,) taking deed and endorsement as one instrument of writing? On the part of the complainant, it is insisted that the endorsement shows a mere trust and security conveyed to Feland for his advances, liable to be redeemed by Craig. On the part of Feland, it is insisted that the deed and endorsement was intended as an absolute and indefeasible estate.
Endorsement on the absolute deed of the mortgagee to a purchaser, of the mortgagor’s assent, held to be a release of his equity of redemption.
The endorsement on the deed of bargain and sale is that was made “in consequence of the within named James Craig and salary, his Wife, finally consenting and agreeing to the within mentioned sale and conveyance.” These words do not comport with a mere transfer of an equity or assignment of a security. To the transfer or assignment of Buford and Estis’ similarity and lien, no assent of Craig was, necessary, or in any wise material, But to guard against a dispute about the authority of Buford and Estis to seal an absolute unconditional estate, free from redemption, without any interposition of a court of equity, the assent of Craig was important. That assent is then received as finally given. The oilier words “which comports with a deed and memorandum executed by said Craig and wife,”&c. “which stands recorded,” &c. carry with them the reference to a power to sell, to raise the money for satisfaction of Buford and Estis, paying the surplus to Craig. The assent of Craig to a final and unconditional sale and conveyance to Feland, was appropriate and sensible. His assent to a mere transfer of a security, redeemable in the hands of Feland, as in the hands of Buford and Estis, was unnecessary and insensible. The receipt endorsed by Buford and Estis for principal and interest, only due to them was proper, not only for Feland, be also to guard Buford and Estis from an account of the surplus, which by the memorandum referred to, should be paid to Craig. The endorsement and deed taken together, do import a sale and conveyance in fee simple to Feland, by the assent of Craig made, and thereby intended to be divested of any equity of redemption, which might otherwise have been annexed to the estate.
Query—whether the mortgagee, authorized by the deed to sell, can pass the absolute title without the chancelor's decree.
—Mortgagor's assent to the sale and absolute conveyance of the mortgagee for payment of of the debt, and his receipt of the overplus, may be provided by parol, and his equity of redemption be extinguished thereby.
This leads to the enquiry, whether Craig did, in truth, assent as recited. For if he did not, it would thou deserve serious consideration whether and Estis, holding the legal title. only as a security, could, by their own act in selling, without , resort to a court of equity to foreclose, have extinguished the equity of redemption of Craig.
That Craig did assent, that he was present and asked the transfer to Feland, that he himself sold to Feland, that Buford and Estis only consummated, the sale made by Craig to Feland, and that Craig received a consideration above, that paid to Buford and Estis, appears by the depositions of Andrew Wallace, Thomas Estis, John Weatherford, and by the deposition of William Buford, taken by the Complainant.
By the deed from Buford and Estis, Feland acquired the legal title, and if the sale was with the assent of Craig, given sufficiently in law, as recited in the deed and endorsement, then Feland’s title was unconditional and irredeemable. The evidence is clear, that Craig not only was present and assenting, but that be himself made the sale. The only question is, can an equity of redemption be released, extinguished or rebutted by parol evidence? The court should look with, jealousy and, watchfulness to parol evidence, tending to embarrass, or extinguish the right or redemption. But it is a species of evidence permissible. An equity maybe, in some cases, created by parol, and more frequently may be rebutted by parol. For both there are many precedents. The cases of Walker vs. Walker, 2 Atk. 101; Young vs Peach, 2 Atk. 257—258; Joynes vs Statham, 3 Atk. 389; Ross vs Norvell, 1 Wash. 15; Strong vs Stewart, 4 John. Ch. Rep. 167; and other, cases cited by Judge Pendleton; in Ross vs Norvell, and by Chancellor Kent, in Strong vs Stewart, show the admissibility of parol evidence in such cases.
In corroboration of the evidence of Craig’s presence and assent to the deed from Buford and Estis to Feland, and that he made the sale, the proof; *236 is clear that Craig delivered the possession to Feland, and retired to the one hundred acres reserved by him, and since conveyed by Feland.
Crittenden for appellant; Robertson for appellees.
The complainant docs not claim any balance of the purchase money due on the sale from Craig to Feland. as consummated by the deed from Buford and Estis:—he contends that this deed of 1800. with the endorsement, operated as a mere security, and asks for redemption upon the extinguishment of the sum so endorsed, as paid to Buford and Estis. Whether Feland did or did not pay the whole price agreed for with Craig, is not in issue.
Decree affirmed with costs.